

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

CNR:JWB/AEF  *610 Federal Plaza*
F. #2016R00349  *Central Islip, New York 11722*

December 22, 2020

<u>By ECF</u>

The Honorable Anne Y. Shields
United States Magistrate Judge
United States District Court
100 Federal Plaza
Central Islip, New York 11722

      Re:    United States v. Patrice Runner
            <u>Criminal Docket No. 18-578 (JS)</u>

Dear Judge Shields:

      The governments respectfully submits this letter in advance of the arraignment of defendant Patrice Runner ("Runner") on the above-referenced indictment (the "Indictment"). For the reasons stated below, the government requests that Runner be permanently detained before trial. Runner, who is a French and Canadian citizen with no known ties to the United States, poses a significant risk of flight.

    I.    SUMMARY OF PENDING CHARGES

      Runner was indicted in October 2018 on charges of mail fraud, wire fraud, conspiracy to commit mail and wire fraud, and conspiracy to commit money laundering related to his operation of a $180 million fraudulent mass mailing scheme for approximately 20 years.

      From 1994 through November 2014, Runner conspired with others to operate a mail fraud scheme that defrauded victims in the United States and Canada. Runner directed the activities of the scheme and multiple co-conspirators.

      Under the scheme, Runner and his co-conspirators sent letters that appeared to be personalized communications from two French psychics. The letters induced consumers to send money for purportedly personalized astrological services and reports, as well as for purportedly unique or supernatural objects. In fact, the scheme sent nearly identical letters to tens of thousands of victims each week. Runner and his co-conspirators obtained the names of elderly and vulnerable victims by renting and trading mailing lists with other mail fraud

schemes. When a victim responded to one letter, Runner and his co-conspirators sent dozens of additional letters to the victim. Each of these additional letters also appeared to be a personalized letter from the psychics and requested additional money from the victim. The psychics had no role in sending the letters, did not receive responses from the victims, and did not send the additional letters after victims paid money.

When victims paid money in response to the fraudulent letters, Runner and his co-conspirators caused the payments to be sent from a location in the Eastern District of New York, to a payment processor in Vancouver, Canada. Runner and his co-conspirators then instructed the payment processor to send wire transfers to pay the expenses of the mail fraud scheme. Runner and his co-conspirators also directed wire transfers to bank accounts controlled by Runner and other co-conspirators, including accounts at banks in Switzerland and Liechtenstein. The fraudulent mail fraud scheme resulted in losses of over $180 million dollars from more than one million victims in the United States.

II. RELEVANT LEGAL STANDARDS FOR DETENTION

"The Bail Reform Act authorizes pretrial detention upon the court's finding that 'no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" United States v. Agnello, 101 F. Supp. 2d 108, 109 (E.D.N.Y. 2000) (quoting 18 U.S.C. § 3142(e)). At a detention hearing, the Court shall consider, among other factors, "the available information concerning—"

(1) The nature and circumstances of the offense charged;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct…; and…

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Detention may be ordered on risk-of-flight or risk-of-obstruction grounds if the government establishes such grounds by a preponderance of the evidence. United States v. English, 629 F.3d 311, 319 (2d Cir. 2011); United States v. Chimurenga, 760 F.2d 400, 405-06 (2d Cir. 1985); United States v. Berger, 2006 U.S. Dist. LEXIS 55844, at *6 (E.D.N.Y. Aug. 9, 2006). ). The rules governing admissibility of evidence at trial, however, do not apply in a detention hearing. Id.; Fed. R. Evid. 1101(d)(3). Accordingly, the

government submits this evidence by way of proffer. See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (explaining that the government is entitled to proceed by proffer in a detention hearing) (citing United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995)); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986) (same).

III. RUNNER PRESENTS A SERIOUS RISK OF FLIGHT AND SHOULD BE DETAINED

Runner poses a significant risk of flight to Canada, France, or another foreign country if released. He has extensive foreign ties and has a significant incentive to escape this Court's jurisdiction because of the lengthy sentence he likely faces if convicted.

First, the government is not aware that Runner has any family, community, or employment ties to the Eastern District of New York, or to the United States. To the government's knowledge, he has never resided in the United States. Runner is a dual citizen of Canada and France. Most recently, Runner resided in Ibiza, Spain, where his wife and children still reside. Runner also has family in Canada. During the course of the conduct charged in the indictment, Runner lived in numerous foreign countries, including Canada, Switzerland, France, the Netherlands, Costa Rica, and Spain.

Runner was arrested based on the Indictment in December 2018, in Ibiza, Spain by Spanish authorities, based on a request by the United States for his arrest and extradition. Over the course of the last two years, Runner contested his extradition to the United States through multiple appeals, evidencing his desire to avoid submitting himself to this Court's jurisdiction. While extradition proceedings were pending, Runner was released from Spanish custody, but was required to surrender his passports and check in regularly. However, once Runner's extradition was certified by the Spanish government, he was detained in Spain pending his surrender to the custody of the United States.

Runner's extensive connections to multiple foreign countries, and lack of ties to the United States, present a significant risk that, if released by the Court, Runner would flee to a foreign country. Depending on the country, it would require years of effort or may even be impossible for the United States to return Runner to this jurisdiction. Specifically, Runner is a French citizen and has previously resided in France. The extradition treaty between the United States and France does not obligate France to extradite its nationals and France does not extradite its nationals, making Runner's extradition impossible were he to flee to France.

Second, through this fraud scheme, Runner obtained and transferred to foreign banks significant assets that may allow him the means to finance flight and support himself in a foreign jurisdiction. See United States v. Shelikhov, 468 F. App'x 54, 56 (2d Cir. 2012) (affirming detention where defendant "had both a strong motive to flee and the means to finance flight"); United States v. Sabhani, 493 F.3d 63, 76 (2d Cir. 2007) ("[A] second factor strengthens the case for detention: defendants' ample means to finance flight."). Throughout the course of the fraud scheme charged in the Indictment, Runner transferred millions of

dollars to a bank account in Liechtenstein in the name of a company he controlled, then further transferred those funds to bank accounts in his own name in other foreign countries, including Switzerland and France.  Runner may have access to those fraud proceeds or other substantial assets.

The Second Circuit has previously reversed a district court's decision to release a defendant where the proposed bond was dwarfed by the amount of money embezzled in the defendant's fraudulent scheme.  See United States v. Londono-Villa, 898 F.2d 328, 329-30 (2d Cir. 1990) (reversing release on bail based on flight risk where bail proposed amounted to much less than the money potentially involved in the crime); United States v. Amico, 2006 U.S. Dist. LEXIS 60996, at *8-9 (W.D.N.Y. Aug. 25, 2006) (defendant found to be a flight risk where large amounts of money went unaccounted for in fraud scheme); United States v. Lugo-Rios, 2006 U.S. Dist. LEXIS 49657, at *10-11 (D.P.R. July 19, 2006) (defendants found to be a flight risk where the amount of money stolen from health care scheme could not be determined).

Finally, Runner has a strong incentive to flee to avoid a lengthy prison term: each of the 18 counts in the Indictment carries a maximum term of imprisonment of 20 years, and his guidelines range is likely to be life imprisonment if convicted at trial.  That guidelines range results because Runner's fraud loss amount exceeds $150 million and his conduct implicates numerous additional enhancements under the Sentencing Guidelines.  The Second Circuit has held that the possibility of a severe sentence is an important factor in assessing flight risk.  See United States v. Khusanov, 731 F. App'x 19, 21 (2d Cir. 2018) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee."); United States v. Jackson, 823 F.2d 4, 6 (2d Cir. 1987) (flight risk because of "indictment under which the defendant faces at least ten years of imprisonment"); Martir, 782 F.2d at 1147 (defendants charged with serious offense whose maximum combined terms created potent incentives to flee).  Runner faces strong incentives to flee now that he is in United States custody and facing serious charges and a substantial prison sentence.

Further, the weight of the evidence against Runner is strong, including witnesses, emails, and financial records.  The evidence will show that Runner ran the fraudulent mass mailing scheme for twenty years and laundered the proceeds.  Where the evidence of guilt is strong, as here, it provides "a considerable additional incentive to flee." United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993); see United States v. Berkun, 392 F. App'x 901, 903 (2d Cir. 2010) ("Because the evidence of guilt is strong, it provides Berkun with an incentive to flee.").

Under these circumstances, Runner poses a substantial risk of flight and no condition or combination of conditions will reasonably assure his appearance.  He should be detained.

IV.    CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court enter a permanent order of detention to guarantee the defendant's continued appearance before the Court as required.

Respectfully submitted,

SETH D. DUCHARME
Acting United States Attorney

By:    /s/ *Charles N. Rose*
Charles N. Rose
Assistant U.S. Attorney
(631) 715-7844

JOHN W. BURKE
Assistant Director
ANN ENTWISTLE
Trial Attorney
U.S. Department of Justice
Consumer Protection Branch