CNR/JWB/AFE
F. #2016R00349

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against –

                               Cr. No. 2:<u>18-CR-578 (JS)</u>

PATRICE RUNNER,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

<u>GOVERNMENT'S MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS</u>

                                 BREON PEACE
                                 United States Attorney
                                 Eastern District of New York
                                 610 Federal Plaza
                                 Central Islip, New York 11722

                                 GUSTAV W. EYLER
                                 Director
                                 Consumer Protection Branch
                                 U.S. Department of Justice

ANN ENTWISTLE
Trial Attorney
JOHN W. BURKE
Assistant Director
Consumer Protection Branch
U.S. Department of Justice

  **(Of Counsel)**

i

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 1

ARGUMENT ............................................................................................................. 5

   I.     Legal Standards Applicable to Motion to Dismiss an Indictment ................................. 5

   II.    The Elements of Mail Fraud and Wire Fraud .................................................. 7

   III.   The Indictment Alleges a Scheme to Defraud ................................................. 8

      A.   The Indictment alleges that the defendant intended to defraud victims of the scheme ... 9

      B.   A refund policy and so-called disclaimers in the letters do not undermine the
sufficiency of the charged scheme to defraud or negate other evidence of intent to defraud 12

      C.   The false statements and misrepresentations alleged in the Indictment are material to the
"bargain" offered in the psychic solicitation letters ............................................. 13

      D.   Courts have long acknowledged that the mail fraud statute reaches those who run
schemes to defraud under the auspices of supernatural or psychic powers........................... 14

   IV.   The Indictment Does Not Run Afoul of the First Amendment...................................... 17

      A.   The First Amendment does not offer blanket protection to fraudulent activity conducted
under the guise of psychic prediction ................................................................. 17

      B.   The Government's Proposed Interpretation is Not Unconstitutionally Vague ............. 20

CONCLUSION.......................................................................................................... 21

**INTRODUCTION**

The Government respectfully submits this memorandum of law in opposition to the defendant's motion to dismiss the Indictment.

The Court should deny defendant's motion to dismiss because the Indictment alleges all of the requisite elements of the crimes charged, including the existence of a scheme to defraud, and is further supported by detailed factual allegations. Further, the indictment does not violate defendant's right to freedom of speech because false claims made to effect a fraud are not protected speech under the First Amendment. *United States v. Alvarez*, 567 U.S. 709, 723 (2012). The motion to dismiss must be denied.

**BACKGROUND**

On October 25, 2018, a grand jury returned the Indictment in this case, charging the Defendant Patrice Runner with conspiracy to commit mail and wire fraud, mail fraud, wire fraud, and conspiracy to commit money laundering in connection with his operation of a long-running direct-mail fraud scheme. Indictment, Dkt. #1. The Indictment goes on to describe the fraudulent scheme as follows: Defendant Runner and his co-conspirators sent letters to individuals throughout the United States and Canada that purported to be individualized communications from world-renowned psychics, offering purportedly personalized astrological services or unique and supernatural objects in exchange for payment of a fee. *Id.* at ¶ 1. The letters, in fact, were mass-produced form letters that were sent by Runner and his co-conspirators, not by the psychics who purportedly authored the letters. Victims who submitted payments received no personalized psychic services or unique or supernatural objects. *Id.*

1

The letters appeared to come from one of two French psychics and offered to help the recipients achieve good luck or material benefits, or to avoid bad fortune, illness, or other negative outcomes. *Id.* ¶ 5. Specifically, the letters fraudulently represented that the psychic purportedly writing the letter had had visions or otherwise determined through the use of psychic powers that the recipient of the letter had the opportunity to achieve great wealth and happiness or to avoid illness or bad fortune with the psychic's assistance. *Id.* ¶ 6. The letters appeared to be personalized, repeatedly referring to the recipient by name and often containing portions that appeared handwritten. *Id.* The letters directed the recipient to send a payment to purchase various purportedly unique and supernatural objects, or additional purportedly personalized astrological services and studies from the psychic. *Id.* ¶ 8. Many of the letters directed the victims to return personal items, including photographs, palm prints, and locks of hair, and represented that the psychic would use those items to conduct additional personalized rituals and astrological services. *Id.* ¶ 9.

Runner and his co-conspirators sent as many as 30-40 different letter solicitations to any victim who made a payment, all containing additional false claims regarding specific visions one of the psychics had about the recipient and individualized services the psychic would provide in exchange for a fee. *Id.* ¶ 10.

Defendant attached one representative example of a letter sent as part of the scheme, many of which will be introduced in evidence at trial, in Exhibit B to his motion to dismiss. Def. Mem. Exhibit B, Dkt. #37-3, at 29-37. Like all of the letters described in the indictment, this solicitation purports to be a personalized letter from a famous psychic, Maria Duval, informing the recipient that she and another respected psychic had simultaneous visions about the recipient, and "in those visions, we both saw you winning <u>a large sum of money on the lottery</u> very soon

and solving all those urgent problems that have been casting a shadow over your life until now!"
*Id.* at 32 (emphasis in original).  The letter contains what are styled to look like hand-written notes that both psychics took during their visions regarding the recipient, which both include the recipient's first name (edited to be specific to the recipient on each of the thousands of virtually identical form letters sent out) and phrases such as "$40,000,00" and "Powerball!" and "Big lottery win."  *Id.* at 36.  In the text of the letter, "Maria Duval" states that if the recipient sends in a payment, she and the other psychic will provide an "invaluable GUIDE to your NEW LIFE," in which, the letter claims:

> We've written down everything we've seen for you in one unique, invaluable, but very straightforward document.  If you read this guide, you're going to have all the tips and information you need to seize the opportunities that come your way, at exactly the right moment.
>
> For example, you're going to know what day and what numbers to play <u>to win again and again</u> (all you're going to need to do is check off the numbers we indicate to you on your lottery tickets).

*Id.* at 33.  The final page of the letter, titled "Special Assistance Form," is written from the perspective of the recipient and states what the recipient is "accepting" by returning the form along with a $50 payment as follows:

> (X) YES, my dear Maria, I would be absolutely delighted to accept this money and these changes for the better that are being offered to me today and that both you and Patrick Guerin have seen coming into my life. …
>
> (X) Both of you saw for me, at the same time the following great changes:
>
>     1) A first happy event in 27 days.
>
>     2) Many major wins on games of chance.
>
>     3) An end to all my most urgent problems.
>
>     4) Good news in my relationships and my emotional life.
>
>     5) Other (significant) wins on games of chance!
>
>     6) A totally new and much happier life!

Yes, I want these transformations in my life and so would ask you kindly to perform:

(X) My Grand Ceremony which can make me a WINNER and allow me to SEE and SEIZE these many important opportunities that are coming my way, particularly in the area of MONEY!

And please send me:

(X) My mysterious talisman with the power to attract LUCK and MONEY.

(X) My Invaluable Guide to my New Life, in which I'm going to find all the information I need to grasp my many chances at exactly the right time when they come along.  Such as for example: The days and numbers I should play to maximize my chances to win, and win BIG! What I need to do to change my life and see an end to my problems.

*Id.* at 37.

This Special Assistance Form page also contains the "disclaimer" to which defendant refers in his motion. Def. Mem. at 18, 22.  The "disclaimer" runs vertically up the left side of the page in a font that appears to be half the size of the text in the rest of the letter or smaller.  Def. Mem. Exhibit B at 37.

The indictment alleges that, in reality, no psychics performed any personalized astrological services or provided any studies.  Both the original letters soliciting payments and the response letters victims received after sending in a payment (which, in turn, requested additional payments) were mass-produced form letters that were not sent by the named psychics, who had no involvement in sending the letters or receiving responses from victims.  *Id.* ¶¶ 6, 10. Runner knew very well that none of the predictions and promises in the solicitation letters came from the psychics themselves, because the defendant wrote some of the letters, and edited letters written by others.  *Id.* ¶ 6.

Further, the defendant knew that the representations that the psychic had a specific vision concerning the recipient of the letter that caused the psychic to write the letter, such as the claims

4

described above of visions that the recipient would win large sums in the lottery with Maria Duval's help, were false. *Id.* ¶ 7. The defendant himself selected many of the recipients of the letters by renting mailings lists from other direct mailers, including other mailers sending fraudulent psychic letters. *Id.* The defendant also knew very well that any purportedly unique or supernatural objects offered in the letters, such as the "Talisman that can attract <u>MONEY</u> and <u>LUCK</u>," were mass produced trinkets. *Id.* ¶ 8. Further, the defendant knew that despite promises in the letters that in exchange for the response and payment the psychics would perform personalized astrological services or studies, such as the "Grand Ceremony" and "Invaluable Guide to My New Life" containing personalized lottery numbers described above, in fact the psychics did not provide any personalized psychic services or studies for victims who made payments. *Id.*

Defendant Runner now moves to dismiss the indictment on the basis that: (1) the indictment does not sufficiently allege a scheme to defraud under 18 U.S.C. §§ 1341 and 1343; and (2) the indictment violates the First Amendment of the United States Constitution. For the reasons set out below, the Court should reject both arguments, and deny the defendant's motion.

## ARGUMENT

### I.   Legal Standards Applicable to Motion to Dismiss an Indictment

It has long been settled law that "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). Accordingly, dismissal of an indictment is an "extraordinary remedy reserved only for extremely limited circumstances implicating

fundamental rights." *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001) (internal quotation marks omitted).

"Pursuant to Federal Rule of Criminal Procedure 7, 'the indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *United States v. Vilar*, 729 F.3d 62, 80 (2d Cir. 2013) (quoting Fed. R. Crim. P. 7(c)(1) (alterations omitted)).  "An indictment is sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).  "[T]o satisfy the pleading requirements of Rule 7(c)(1), an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Stringer*, 730 F.3d at 124 (quoting *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000)) (internal quotation marks omitted).

Further, a review of an indictment on a motion to dismiss is limited to the language of the indictment itself and should not include the review of evidence extrinsic to the indictment. *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998).  "To the extent that the district court look[s] beyond the face of the indictment and dr[aws] inferences as to proof that would be introduced by the government at trial . . . such an inquiry into the sufficiency of the evidence [is] premature." *Id.*  On a motion to dismiss pursuant to Federal Rule of Criminal Procedure 12(b), the allegations of an indictment must be taken as true.  *See Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n.16 (1952); *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985). "Unless the government has made what can fairly be described as a full proffer of the

6

evidence it intends to present at trial[,] the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." *United States v. Perez*, 575 F.3d 164, 166-67 (2d Cir. 2009) (internal quotation marks and alteration omitted).

## II.   The Elements of Mail Fraud and Wire Fraud

To prove mail and wire fraud, the Government must establish the following elements: (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme. *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017) (per curiam), citing *United States v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015).   With regard to the scheme to defraud, "[b]ecause the mail fraud and the wire fraud statutes use the same relevant language, we analyze them the same way." *United States v. Schwartz,* 924 F.2d 410, 416 (2d Cir.1991).

The Second Circuit has held that "[t]he scheme-to-defraud element is construed broadly to encompass 'everything designed to defraud by representations as to past or present, or suggestions and promises as to the future.'" *United States v. Reifler*, 446 F.3d 65, 95 (2d Cir. 2006) (*quoting United States v. Altman*, 48 F.3d 96, 101 (2d Cir. 1995)).   Further, courts should "consider[ ] the scope of [the] fraudulent scheme…and give appreciation to its 'full flavor.'" *Id.* (quoting *Schmuck v. United States,* 489 U.S. 705, 711-712, 109 S.Ct. 1443 (1989)).   "It need not be shown that the intended victim of the fraud was actually harmed; it is enough to show defendants contemplated doing actual harm, that is, something more than merely deceiving the victim." *United States v. Schwartz*, 924 F.2d 410, 420 (2d Cir. 1991).   The deceit practiced must be related to the contemplated harm, and that harm must be found to reside in the bargain sought to be struck. *Id.* at 1182. *United States v. Schwartz*, 924 F.2d 410, 420 (2d Cir. 1991).   Where, as here, "the false representations are directed to the quality, adequacy or price of the goods

7

themselves, the fraudulent intent is apparent because the victim is made to bargain without facts obviously essential in deciding whether to enter the bargain." *Binday*, 804 F.3d at 578 (quotation omitted).

In order to prove the scheme to defraud, the Government must prove that the misrepresentations were "material" and that the Defendants acted with fraudulent intent. *Weaver*, 860 F.3d at 94 (citations omitted). The focus in assessing a misrepresentation's "materiality" remains on a defendant's intent and whether his conduct was intended to deceive. *Id*. at 95. "To be material, the information withheld either must be of some independent value or must bear on the ultimate value of the transaction." *United States v. Autuori*, 212 F.3d 105, 118 (2d Cir. 2000) (quoting *United States v. Mittelstaedt*¸ 31 F.3d 1208, 1217 (2d Cir. 1994)). *See also United States v. Rybicki*, 354 F.3d 124, 147 (2d Cir. 2003) (en banc) (noting that "materiality" requires proof that misrepresentations or omissions "ha[d] the natural tendency to influence or [were] capable of influencing the [victim] to change its behavior.").

## III.   The Indictment Alleges a Scheme to Defraud

The indictment is facially sufficient because it sets forth the elements of the offenses in both the statutory language and with specific factual allegations, the defendant is on fair notice of the charges against which he must defend, and the defendant is able to assert a double jeopardy defense. *See Stringer*, 730 F.3d at 124. In his motion, the defendant points to facts alleged in the indictment, as well as facts extrinsic to the indictment, to argue that the indictment fails to allege a scheme to defraud. Def. Mot. at 14-21. The Indictment is a 14-page "speaking" indictment, and it explicitly alleges a scheme to defraud, with detailed factual allegations incorporated by reference into each of the charges. Indictment, ¶¶ 1-27. When evaluated according to the

appropriate standard, the Indictment is facially sufficient and satisfies any reasonable interpretation of due process.

### A.  The Indictment alleges that the defendant intended to defraud victims of the scheme

The defendant asserts that the Indictment fails to allege that he intended harm to his victims.  On the contrary, the Indictment states succinctly that: "The object and purpose of the scheme was to obtain money from the Victims by means of [the] false and fraudulent statements and material concealments of fact in the letters."  This is an explicit allegation that Runner and his co-conspirators intended to harm his victims by the misrepresentations contained in the letters sent as part of the scheme.

The indictment then provides detailed allegations regarding the nature of the misrepresentations and the nature of the items and services Runner's letters were offering for sale.  Specifically, the indictment alleges the letters: 1) falsely purported to be individualized communications from world-renowned psychics; 2) falsely represented that the psychic purportedly writing the letter had had visions or otherwise determined through the use of psychic powers that the recipient of the letter had the opportunity to achieve great wealth and happiness or to avoid illness or bad fortune with the psychic's assistance; and 3) offered purportedly personalized astrological services or unique and supernatural objects in exchange for payment of a fee.  In direct contrast to these representations to the Victims of the scheme, Runner and his co-conspirators knew that the letters were not sent by the psychics who purportedly authored them; nearly identical letters were sent to thousands of potential victims at one time; no psychics would in fact provide any services, and all anyone who made a payment would receive would be more falsely personalized form letters and mass-produced trinkets. Indictment ¶¶ 1, 5-10.

The defendant concedes that the payments customers remitted in exchange for psychic services would be a cognizable injury in the case that such customers did not receive the benefit of their bargain.  Def. Mem. at 14.  However, the defendant asserts that what the customers of his scheme "bargained for," that is, what they thought they were purchasing was "'information' whatever its worth" and "entertainment."  *Id.*  Because, he argues, what customers were purchasing was entertainment, "it does not matter that the services were neither magical nor personalized."  *Id.*  While the defendant is free to present evidence and argue to the jury at trial that his letters offered for sale merely entertainment, the question before the Court at this juncture is what the indictment itself alleged, and the indictment alleges that the goods and services offered in the letters were individualized services by the world-renowned psychics who appeared to have written to the victims and purportedly unique and magical objects.  Indictment ¶ 1, 5, 8.  The Indictment further alleges that victims who made payments did not receive individualized psychic services and unique and magical objects. Indictment ¶ 8.  The misrepresentations in the letters were clearly "direct to the quality…of the goods themselves" and "the fraudulent intent is apparent because the victim is made to bargain without facts obviously essential to deciding whether to enter the bargain."  *Binday*, 804 F.3d at 578.

In support of his argument that the letters offer only entertainment, Runner cites to a case in which the Maryland Court of Appeals struck down a county ordinance banning the practice of fortune-telling.  Def. Mot. at 14, *citing Nefredo, 414 Md. at 585, 603-04, 608* (holding that the county's stated purpose of combatting fraud could be served by less restrictive means through existing laws prohibiting fraud in regard to deceptive trade practices).  *Id.* at 606-607.  The court in *Nefredo* stated that the purpose of fortunetelling is to provide "some benefit to the individuals involved, whether entertainment or information that sheds light on future events."  *Id.* at 603-

604.  The mere fact that psychic or fortune telling services can at times be offered and sold for the purpose of entertainment does not necessitate the conclusion that the solicitation letters at issue *in this case* were offering for sale merely entertainment, or that Mr. Runner's intent was merely to entertain.  Ultimately, the questions of what the letters at issue in this case were offering for sale and of Mr. Runner's intent are questions of fact for the jury to decide.  When analyzing the question of intent, a jury may consider "all the circumstantial evidence it has received on the scheme and the purpose of the scheme in which the defendant allegedly participated." *United States v. Guadagna*, 183 F.3d 122, 129-30 (2d Cir. 1999).

The indictment alleges, and the government will present evidence at trial, that Mr. Runner's intent was to deceive the recipients of the letters into thinking that they were in fact from Maria Duval or another psychic, and to further deceive them into thinking that with their payment they were purchasing unique and magical items and psychic services by Ms. Duval or another psychic that would allow them to win large sums of money, such as the winning lottery numbers.  Indictment ¶¶ 1, 5-10.  The example solicitation described *supra* at pages  provides just one example of the type of evidence that will be offered at trial.  The letter describes in detail for nine pages the visions psychics had of the recipient of the letter winning the lottery and the individualized psychic assistance they will provide when the recipient sends in the "Special Assistance Form" along with a payment.  Def. Mot. Exhibit B at 29-37.  The letter, and many others sent to the Victims in the case, was an elaborate ruse to make the Victims think they were corresponding with a famous psychic and paying for additional services and items from her. Whether the defendant possessed the requisite intent to defraud by sending these letters is a question of fact, and it is for the jury to determine the credibility of the evidence and to draw such inferences from it as are reasonable.  *Guadagna*, 183 F.3d at 129-30.  It would be premature

for the Court, on a motion to dismiss the indictment, to look beyond the face of the indictment and weigh the sufficiency of the evidence. *Alfonso*, 143 F.3d at 776.

### B. A refund policy and so-called disclaimers in the letters do not undermine the sufficiency of the charged scheme to defraud or negate other evidence of intent to defraud

The defendant places great emphasis on the so-called disclaimer that appeared on the letters sent as part of his scheme. The disclaimer states on one single page, in barely decipherable micro-print running vertically up the side of the page that it is "for novelty and entertainment purposes only." Def. Mot. Exhibit B at 37. It is well-settled that a disclaimer does not operate to correct misleading statements in mail and wire fraud prosecutions. *See*, *e.g.*, *Weaver*, 860 F.3d at 95 (holding that contractual disclaimers of reliance on prior misrepresentations do not render those misrepresentations immaterial under the criminal mail and wire fraud statutes); *United States v. Press*, 336 F.2d 1003, 1010 (2d Cir. 1964) (mail fraud conviction upheld despite the use of disclaimers); *United States v. Schlussel*, No. 08 CR. 694, 2008 WL 5329969, at *1 (S.D.N.Y. Dec. 15, 2008) (presence of disclaimer did not negate intent to defraud such that indictment should be dismissed and tiny typeface used to print the disclaimer may be probative of intent to defraud); *see also United States v. Yarnell*, 129 F.3d 1127, 1133–34 (10th Cir. 1997) (disclosures in contract did not negate other evidence of fraudulent intent).

Further, Defendant's assertion that a refund was available upon request, Def. Mem. at 12, does not operate to relieve him of criminal liability for the sending of fraudulent solicitation letters. The offense of mail fraud is completed upon use of the mail, not after the Defendant decides whether or not to give back a victim's money if called to account. *United States v. Hickey*, 16 F. Supp. 2d 223, 234 (E.D.N.Y. 1998) (noting that the offense of mail fraud "is

complete upon the hatching of the scheme with the requisite intent supplemented by the use of the mails"); *United States v. Kenner*, 272 F. Supp. 3d 342, 412 (E.D.N.Y. 2017) (denying motion for acquittal on wire fraud counts despite evidence that defendant offered refund).

Defendant's arguments about the disclaimer and the refund policy do not provide any basis to dismiss the indictment.  While defendant may present evidence or argument at trial about these issues, these factual issues do not undermine the clear and detailed scheme to defraud alleged in the indictment.

### C.  The false statements and misrepresentations alleged in the Indictment are material to the "bargain" offered in the psychic solicitation letters

The defendant argues that the misrepresentations alleged in the indictment are not the type of misrepresentations the Second Circuit has found to be material for purposes of finding a scheme to defraud under the mail and wire fraud statutes.  Def. Mem at pp. 18-20.  The Defendant cites to *United States v. Shellef*, 507 F.3d 82, 108 (2d Cir. 2007), for the principle that schemes "that do no more than cause their victims to enter into transactions they would otherwise avoid…do not violate the mail or wire fraud statutes."  Def. Memo. at 18.  The full quotation reads as follows:

> Our cases have drawn a fine line between schemes that do no more than cause their victims to enter into transactions they would otherwise avoid-which do not violate the mail or wire fraud statutes—and schemes that depend for their completion on a misrepresentation of an essential element of the bargain—which do violate the mail and wire fraud statutes.

*Id.*  The indictment in this case clearly alleges the latter type of scheme.  The "bargain" posed on the face of the letters, as alleged in the Indictment, is that the recipient of the letter will make a payment in order to receive personalized psychic services from a world-renowned psychic.  Indictment ¶¶ 1, 8.  Therefore, misrepresentations that the solicitation letter was written and sent

by a psychic who had an individualized vision regarding the recipient and misrepresentations that the psychic will be providing individualized psychic services are misrepresentations of an essential element of the bargain.

This case is unlike *United States v. Regent Office Supply Co.*, 421 F.2d 1174 (2d Cir.1970), where the Court found that a scheme in which sales personnel fraudulently claimed that they had been referred by a friend of the customer in order to induce sales was not a scheme to defraud within the meaning of the mail fraud statute because the misrepresentation was "not directed to the quality, adequacy or price of goods to be sold, or otherwise to the nature of the bargain."

In this case, where the "bargain" being offered is a payment in exchange for personalized psychic services, whether or not the letter was written and sent by the psychic offering personalized assistance is directly relevant to the quality and nature of the services to be sold. Contrary to the defendant's assertion, in this context, misrepresentations that the items purchasers will receive are unique and magical and that individual psychic services will be provided go directly to that nature of the bargain. The indictment sufficiently alleges that misrepresentations alleged in the indictment are material to the "bargain" at issue in the scheme alleged.

### D. Courts have long acknowledged that the mail fraud statute reaches those who run schemes to defraud under the auspices of supernatural or psychic powers.

The defendant acknowledges, as he must, that a fraud scheme could be run under the guise of providing psychic services. Def. Mem. at 11, 14. In fact, there is a long history of courts finding schemes involving the purported provision of supernatural or psychic services to fall within the mail fraud statute, not because psychic services are inherently fraudulent, but

because the government has alleged, and a jury could find, that the defendant has devised a scheme to defraud and had the requisite intent to defraud.

For example, in *United States v. White*, 150 F. 379 (D. Md. 1906), the defendant, through a mass-mail campaign, offered victims personalized psychic readings and charms with special powers.  When charging the jury, the court instructed that it was their job to determine whether the defendant intended to send personalized psychic readings as promised, or whether the defendant "intend[ed] to send to every applicant who paid the $1 fee the same reply, printed by thousands, and made up and sent without reference to the individual applicant, or his lock of hair, or photograph, or piece of cloth, or any impression which the defendant had received with the application?"  *Id.* at 390.  The court emphasized, "To determine this question you do not have to determine whether or not there is such a thing as Psychometry or Clairvoyance and Trance Readings, but simply was this, on the part of the defendant, a conscious and intentional fraud." *Id.* at 390.

Similarly, in *United States v. Schlatter*, 235 F. 381, 382-83 (S.D. Cal. 1916), the court refused to dismiss a mail fraud indictment against defendants who claimed the ability to bless ordinary objects that could then cure victims' ailments.  The indictment specifically alleged that: the defendants represented that they could bless a handkerchief and that if an afflicted person applied that handkerchief to his or her body he could be cured of disease; the defendants knew that they could not cure any kind of disease by divine power; and that the defendants knew that the scheme they were executing was intended to be used for the sole purpose of obtaining money and property from the persons intended to be defrauded.  *Id.* at 381-382.  Defendant Schlatter challenged the indictment on the basis that he was a Divine Healer, that divine healing had been "practiced since the time of Christ," and "is practiced now by many reputable and widely

15

recognized individuals and cults." *Id.* at 382.  The court acknowledged that divine healing was "under the laws of the land, as lawful as healing with drugs," but held that the whole question at issue was that of the good faith of the defendants.  *Id.* at 382-383.  The court stated in summary: "The simple query in the case is: Were they actuated by good faith?  The indictment says they were not, but, on the contrary, were moved by an intent to defraud.  In the face of such an allegation, they cannot claim that no crime is charged against them." *Id.* at 383.

More recently, and highly similar to the scheme at issue in this case, the government prosecuted a scheme that involved mass market solicitations offering psychic predictions promising specific amounts of money, lucky numbers to win the lottery, and trinkets purported to be religiously or spiritually significant.  *United States v. Weingold*, Crim. No. 98-483(NHP) (D.N.J.), *aff'd*, 69 F. App'x 575 (3d Cir. 2003).  As in this case, prior to filing a criminal indictment the prosecutors of the Weingold case sought an injunction under 18 U.S.C. § 1345 in order to immediately enjoin the operators of the scheme from continuing their mass-mailing fraud scheme.  *United States v. Weingold*, 844 F. Supp. 1560 (D.N.J. 1994).  The court's opinion granting the preliminary injunction includes a detailed finding of facts, which describes solicitation letters containing misrepresentations similar in kind to those described in the indictment in this case.  One solicitation letter promised to provide a unique pendant with the power to provide good fortune and win money in exchange for a nominal fee, though Weingold knew that individuals who paid the required sum would receive only inexpensive costume jewelry.  *Id.* at 1568.  Another offer stated that in exchange for a fee, a group of psychics would focus on the recipient and provide him or her with a research file containing a secret formula producing a 93% chance of winning the lottery and guaranteeing the recipient would receive

over $9,000 in cash, when in fact victims who paid all received an identical, generic tract on

numerology.  *Id.* at 1566.

Considering all of these facts, and noting that in order to establish mail fraud under

Section 1341 the government must demonstrate "that the scheme was devised with the specific

intent to defraud,…that the deceit must have gone to the nature of the bargain,…that is, any

nondisclosures or affirmative misrepresentations must have been material, … [and] that some

actual harm or injury was at least contemplated," the court enjoined the defendant from

continuing to engage in mail fraud.  *Id.* at 1574, *citing United States v. William Savran &*

*Associates, Inc.*, 755 F.Supp. 1165, 1180-81 (E.D.N.Y. 1991).

**IV.**     **The Indictment Does Not Run Afoul of the First Amendment**

>    **A.  The First Amendment does not offer blanket protection to fraudulent activity
>    conducted under the guise of psychic prediction**

The Supreme Court has clearly established that "[w]here false claims are made to effect a

fraud or secure moneys or other valuable considerations… the Government may restrict speech

without affronting the First Amendment."  *Alvarez*, 567 U.S. at 723, *citing Virginia Bd. of*

*Pharmacy,* 425 U.S., at 771, 96 S.Ct. 1817 (noting that fraudulent speech generally falls outside

the protections of the First Amendment).

The Defendant argues that his speech related to psychic services is protected speech

under the First Amendment and as a result cannot be deemed fraudulent.  Def. Mot. at 22.

However, this argument is based on a misapplication of the First Amendment caselaw Defendant

cites in his motion.   Defendant cites to a series of cases in which various courts struck down

local ordinances that banned psychic or fortune-telling businesses and rejected the argument that

all fortunetelling is necessarily fraudulent and therefore may be deemed as falling outside of the

17

protection of the First Amendment.  *See e.g. Moore-King v. Cnty. of Chesterfield, Va*., 708 F.3d 560, 567 (4th Cir. 2013) ("fortune telling is not *necessarily* fraudulent or inherently deceptive simply because it involves predictive speech") (emphasis added), abrogated on other grounds by *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 201 L. Ed. 2d 835, 138 S. Ct. 2361 (2018); *Nefedro v. Montgomery Cnty.*, 414 Md. 585, 599, 996 A.2d 850, 858 (2010) (rejecting the argument that fortunetelling is "inherently fraudulent" and, as a result, should not receive any First Amendment protection); *Adams v. City of Alexandria*, 878 F. Supp. 2d 685, 692 (W.D. La. 2012) (similar); *Argello v. City of Lincoln*, 143 F.3d 1152, 1152 (8th Cir. 1998) (similar); *Trimble v. City of New Iberia*, 73 F. Supp. 2d 659, 662 (W.D. La. 1999) (similar); *Rushman v. City of Milwaukee*, 959 F. Supp. 1040, 1041 (E.D. Wis. 1997) (similar); *Spiritual Psychic Sci. Church v. City of Azusa*, 39 Cal. 3d 501, 507, 703 P.2d 1119 (1985) (striking down city ordinance prohibiting fortunetelling and similar businesses as violative of the free speech provisions of the California Constitution).

However, none of these cases stand for the proposition that because fortune-telling and psychic prediction as a category of speech does not fall outside the protection of the First Amendment, no conduct involving psychic speech may be found to be fraudulent.  On the contrary, most of the courts explicitly acknowledge that the appropriate way for the government to protect consumers from fraud operating under the guise of psychic prediction is through prosecution for fraud or deceptive marketing, rather than through blanket bans on psychic prediction as a category of speech.  *See e.g. Nefedro*, 414 Md. At 606-607 (holding that county and state laws making fraud illegal are speech-neutral means for the county to address its concerns regarding fraud practiced under the guise of fortune telling); *Adams*, 878 F. Supp. 2d at 691 ("While it is fraud and not predicting the future which is the City's concern, there are more

18

precise ways of dealing with fraud including prosecution under state laws against theft and which prohibit unfair trade practices."

The Court in *Moore-King* rejected the county's argument that psychic services were categorically deceptive, but noted that the issue of Moore-King's intent raised a genuine issue of material fact, and stated that "[a] jury might well decide that Moore–King's activities are fraudulent or deceptive." *Moore-King* 708 F.3d at 567.

The Court in *Rushman* found an ordinance banning psychic speech as a category to be an overbroad restriction on speech but noted that, "[a]lthough the First Amendment prohibits arbitrating fact and opinion, it allows the government to regulate economic transactions. Therefore, the government can outlaw fraud—false statements made to convince a person to buy an item or invest money." *Rushman*, 959 F. Supp. at 1041. The Court in *Rushman* also distinguished, for First Amendment purposes, the telling of fortunes, which it categorized as not commercial speech versus the use of astrology to sell additional services, which would be commercial speech. Specifically, the Court stated that as a general matter, "an astrologer's advice neither proposes nor encourages an additional transaction," but noted that, "if Rushman told her clients that they had curses and she could remove them, that would be commercial speech because she would be using astrology to sell her curse-lifting services." *Id.* at 1043-44, *citing Ballard v. Walker, 772 F.Supp. 1335 (E.D.N.Y.1991).* The letters at issue in this case, which purport to share personalized psychic predictions for the purpose of convincing the recipient to enter into additional commercial transactions, are commercial speech under the categorization set out in *Rushman*.

### B.  The Government's Proposed Interpretation is Not Unconstitutionally Vague

The defendant's argument that this Indictment reinterprets the mail and wire fraud statutes to declare every business relating to psychic prediction or astrology, as well as every form of entertainment involving suspension of disbelief, to be a crime is a red herring.  Def. Mem. at 25-27.

The Defendant notes that "law enforcement occasionally takes the position that psychic services are inherently fraudulent."  Def. Mem. at 2.  This is a strawman argument when applied to the Indictment against Defendant Runner.  The Indictment does not state simply that the defendant claimed to provide psychic services and *ipso facto* committed fraud.  Rather, the Indictment sets out detailed factual allegations describing an elaborate scheme involving the sending of letters filled with specific claims the defendant knew to be false, for the purpose of convincing the recipients to make payments in the hopes of receiving additional individualized psychic services from specific psychics that would help the victims achieve good luck or material benefits, or avoid bad fortune, illness, or other negative outcomes.  Indictment ¶¶ 1, 5-10, 21-25.

The Indictment in this case sufficiently alleges the elements of the crimes charged and alleges specific facts detailing the fraud scheme operated by Mr. Runner.  These specific allegations put Mr. Runner on notice of the crimes with which he is charged and do nothing to expand the interpretation of the mail and wire fraud statutes to apply broadly to any scenario involving the mere selling of entertainment.

## <u>CONCLUSION</u>

The Court should review the Indictment based on its four corners and deny the motion to dismiss for the forgoing reasons.

Dated: September 29, 2022       Respectfully submitted,

                                           BREON PEACE
United States Attorney

                                           GUSTAV W. EYLER
Director
Consumer Protection Branch
U.S. Department of Justice


                                         <u>/s/ Ann Entwistle      </u>
ANN ENTWISTLE
Senior Trial Attorney
JOHN W. BURKE
Assistant Director
Consumer Protection Branch
U.S. Department of Justice
(202) 305-7227
Ann.F.Entwistle@usdoj.gov
Josh.Burke@usdoj.gov

21