**Federal Defenders**
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

April 12, 2023

BY ECF

The Hon. Joanna Seybert
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

      Re:    *United States v. Patrice Runner*, No. 18 Cr. 578 (JS)

Your Honor:

      This office represents Patrice Runner. I respectfully submit this motion to preclude certain Rule 404(b) evidence outlined in the government's letter of March 24, 2023 ("Letter").

### I.    APPLICABLE LAW

      Evidence of other acts "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such propensity evidence influences the jury to convict "despite what the evidence in the case shows actually happened," *id.*, adv. comm. note, and thereby "undermines the presumption of innocence," *United States v. McCallum*, 584 F.3d 471, 476 (2d Cir. 2009).

      Evidence of other acts may be admitted for non-propensity purposes, *e.g.*, "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). But the government must do more than recite those words. It "bears the burden of *demonstrating* the admissibility of evidence under Rule 404(b)." *United States v. Nachamie*, 101 F. Supp. 2d 134, 137 (S.D.N.Y. 2000) (emphasis added); Fed. R. Evid. 404(b)(3)(B) (it must give "the reasoning that supports the [asserted] purpose"); *United States v. Levy*, 731 F.2d 997, 1002 (2d Cir. 1984) (it "must explain" the purposes "in detail").

      Specifically, the government must demonstrate that the evidence is "(1) offered for a proper purpose; (2) relevant to a material issue in dispute; and (3) its probative value [is not] substantially outweighed by its prejudicial effect." *United States v. Kurland*, No. 20-CR-306 (S-1) (NGG), 2022 WL 2669897, at *4 (E.D.N.Y. July 11, 2022). But Rule 404(b) cannot be "a pretext to submit propensity evidence to the jury." *United States v. Basciano*, No. 03 Cr. 929 (NGG), 2006 WL 385325, at *4 (E.D.N.Y. Feb. 17, 2006); *McCallum*, 584 F.3d at 477 (abuse of discretion to admit "propensity evidence in sheep's clothing" under Rule 404(b)).

## II. EVIDENCE OF UNCHARGED MAILINGS NOT INVOLVING PSYCHIC SERVICES SHOULD BE PRECLUDED

This prosecution alleges "a nearly twenty-year long fraudulent psychic mail order scheme." (Memorandum & Order, Mar. 9, 2023 ("M&O"), at 1). The centerpiece of the government's case at trial will be the mailings that offered psychic services. Whether customers "received the benefit of the[] bargain" set forth in those mailings is the "primary issue" for trial, and it will require the jury's careful consideration—this Court has written that this case "presents a medium" between the parties' positions "in more ways than one." (*Id.* at 21-22).

The government now proposes to sow jury confusion by introducing mailings *not* involving psychic services, but rather nutritional and weight-loss supplements, which it asserts were also fraudulent. (Letter at 1). This evidence should be precluded.

The government fails to demonstrate or explain in detail how mailings not involving psychic services could be relevant to any valid purpose under Rule 404(b)(2). *See* Rule 404(b)(3)(B); *Nachamie*, 101 F. Supp. 2d at 137; *Levy*, 731 F.2d at 1002. Certainly they are not relevant to Mr. Runner's knowledge or intent, the primary issue for trial, because there is no "close parallel" between the charged and uncharged mailings. *United States v. Gordon*, 987 F.2d 902, 908 (2d Cir. 1993) ("[T]he probative value of the proffered evidence depends largely on whether or not there is a close parallel between the crime charged and the acts shown."). The subject matters are different, the government alleges no overlap in customers, and it fails to explain how the uncharged mailings are fraudulent. Moreover, the validity of the uncharged mailings involves medical and nutritional issues having nothing to do with the alleged psychic fraud. The uncharged mailings are thus too discrete and distinct to give rise to any competent inference about Mr. Runner's knowledge or intent regarding the charged fraud. *See, e.g.*, *United States v. Kahale*, 789 F. Supp. 2d 359, 384-86 (E.D.N.Y. 2009) (rejecting evidence of uncharged "other, discrete and distinct business deals" as irrelevant); *United States v. Stein*, 521 F. Supp. 2d 266, 270 (S.D.N.Y. 2007) (rejecting evidence of uncharged tax shelter transactions, in a tax shelter fraud prosecution, as irrelevant to knowledge or intent, because the government "offered only imprecise explanations of why the uncharged transactions were fraudulent and cursory assertions of alleged similarities").

Nor should the uncharged mailings be admitted for context or background. The government seeks to introduce evidence of past agency actions against Mr. Runner for "weight-loss mailings in approximately 1998," after which he was allegedly "physically distant" from his operation and used shell companies and straw owners. (Letter at 1-2). But uncharged evidence of "similar fraudulent acts" is not admissible as "background" even when it might "furnish[] an element of context," when the uncharged conduct involves different transactions, people and times, and is "certainly not crucial information without which the jury will be confused or the government's theory of the case unfairly curtailed." *United States v. Newton*, 2002 WL 230964, at *3 (S.D.N.Y. Feb. 14, 2002) (rejecting proffered evidence of uncharged visa fraud in a visa fraud case). As discussed below, the prior agency actions are themselves irrelevant, confusing, and not necessary to explain Mr. Runner's corporate and physical distance—introducing the underlying weight-loss mailings and litigating *that* alleged fraud would be even more irrelevant, confusing, and unnecessary. None of this is crucial information, and it should be precluded.

2

Furthermore, introduction of the uncharged mailings would force Mr. Runner to defend himself against fraud on each such mailing, resulting in lengthy and unfairly prejudicial mini-trials presenting entirely different fraud theories and factual issues. The risk of juror confusion is manifest. The issue in this case is whether the customers got the psychic services benefit they bargained for, not whether unrelated weight-loss supplements are medically valid. The length of time spent on the latter issue "could lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *United States v. Zhong*, 26 F.4th 536, 553 (2d Cir. 2022). In the recent "lottery lawyer" trial, Judge Garaufis precluded "[e]vidence of an entirely separate scheme of tax fraud" and other uncharged misconduct for precisely this reason, writing:

> The government could have charged those crimes but did not. The court will therefore not hold a mini-trial on them. Introducing an entirely uncharged scheme involving different legal issues would create substantial and unfair prejudice, and would risk the jury confusing the issues.

*Kurland*, 2022 WL 2669897, at *6; *see also Kahale*, 789 F. Supp. 2d at 385-86 (introduction of uncharged transaction even with the same alleged victim would lead to additional "mini-trials" as defendant sought to "defend the legitimacy" of the other transactions, risking "mislead[ing] the jury to make a determination of guilt based on propensity").

Finally, as I mentioned at the last status conference, allowing this evidence would require a lengthy adjournment of a trial that has been already delayed by many years for an incarcerated client. The defense would need to re-tag and review tens of thousands of documents relating to independent lines of business we were previously led to believe were not pertinent. There is no need for such prejudicial delay—the trial should proceed on the charged mailings alone.

## III. EVIDENCE OF OTHER AGENCIES' INVESTIGATIONS AND PROCEEDINGS NOT RELATING TO MAIL OR WIRE FRAUD SHOULD BE PRECLUDED

The government seeks to introduce evidence of "Better Business Bureau, law enforcement, and other governmental investigations, inquiries, and actions that were known to Mr. Runner." (Letter at 1). But beyond boilerplate recitation of the Rule 404(b)(2) purposes, it offers no demonstration how Mr. Runner's knowledge of every past investigation, inquiry or proceeding against his operation is at all relevant. *See* Rule 404(b)(3)(B); *Nachamie*, 101 F. Supp. 2d at 137; *Levy*, 731 F.2d at 1002. The evidence should be precluded.

Courts routinely exclude evidence of prior investigations and proceedings by other agencies. *See, e.g.*, *United States v. Hatfield*, 685 F. Supp. 2d 320, at 323-24 (E.D.N.Y. 2010) (rejecting evidence of defendant's false statements "to a separate investigatory authority on a different subject at a different point in time" (citing *United States v. Cushing*, No. 00-CR-1098, 2002 WL 1339101, at *1-2 (S.D.N.Y. 2002)); *United States v. Levy*, No. 11 Cr. 62 (PAC), 2013 WL 655251, at *1 (S.D.N.Y. Feb. 22, 2013) (excluding evidence of prior FTC fraud proceeding in securities fraud case where the "evidence would lead to a confusing 'mini-trial'" on the distinct prior allegations and risk juror confusion). The Court should follow this practice here.

3

The core problem is that none of the agencies mentioned by the government focuses on federal mail or wire fraud, and none of their inquiries appears to have been focused on the primary issue for trial: whether there was an intent to harm the customers, not just deceive them. To the contrary, for each of the agencies mentioned, mere deceit was sufficient to prompt action. The 2004 United States Postal Service administrative action, for example, was undertaken pursuant to 30 U.S.C. § 3005, a civil statute which prohibits "conducting a scheme or device for obtaining money or property through the mail *by means of false representations*." *Id.* § 3005(a) (emphasis added). The Better Business Bureau, similarly, is focused on "creating and maintaining trust in business," including whether businesses "[h]onestly represent products or services." *See* https://www.bbb.org/standards-for-trust.

Mr. Runner's knowledge of these actions is not probative of any understanding on his part that he might be committing mail or wire fraud, or that he had an intent to harm. Even if there were any minimal probative value, it would be vastly outweighed by the obvious risk of unfair prejudice and juror confusion. The distinction between mere deceit and fraud is subtle, but critical to the defense in this case. (*See* Memorandum & Order at 28). Introducing evidence of prior actions based on mere deceit for the proposition the defendant had a fraudulent mental state stands to undermine this defense.

Moreover, if the government is permitted to identify the subject matter and substance of past actions and investigations—including the above-mentioned actions "against the weight-loss mailings in approximately 1998" and the USPS action in 2004—Mr. Runner will be forced to defend against them, prompting multiple mini-trials on a lesser standard than that to which government's proof will be subject at trial. For example, the government seeks to introduce evidence that "Mr. Runner negotiated with the U.S. Postal Service in bad faith" with respect to the 2004 action. (Letter at 2). A defense to this claim would involve extensive evidence of course of dealing, advice of counsel, litigation about the standards for good and bad faith in postal settlement negotiations, and so forth. None of that is relevant to whether Mr. Runner intended to harm his customers, as opposed to merely deceive them, and all of it serves to dilute and confuse those primary issues. It should be precluded. *Hatfield*, 685 F. Supp. 2d at 323-24; *Levy*, 2013 WL 655251, at *1.

Finally, it is not necessary to adjudicate, or even mention, the prior actions to achieve the government's more limited "background" purpose. For example, the defense could stipulate that the purpose of Mr. Runner's physical and corporate remove from the operation was to avoid scrutiny by the USPS or other authorities. We would agree to this so long as we are permitted to introduce the fact that the relevant scrutiny was focused on deceit, not mail or wire fraud.

### IV. EVIDENCE OF MR. RUNNER'S "LAVISH LIFESTYLE" SHOULD BE PRECLUDED

The government seeks to introduce evidence that "Mr. Runner lived a lavish lifestyle," choosing to spend his money on "frequent and expensive travel and vacations, high-cost private schools for his children, funding and operating a leather-goods store in Cannes, France, and having multiple homes in various countries." (Letter at 2). This is blatant propensity evidence.

4

To be sure, evidence that Mr. Runner made money from the alleged fraud could be relevant,[1] as could transactions that might show an intent to launder that money. But evidence that Mr. Runner simply *spent* money—including money from lines of business unrelated to psychic services—is relevant to nothing but the fact that he had a taste for high-class expenditures. The Supreme Court has warned that this sort of "appeal to class prejudice" is "highly improper and cannot be condoned." *United States v. Socony-Vacuum Oil. Co.*, 310 U.S. 150, 239 (1940); *see also United States v. Stahl*, 616 F.3d 30, 33 (2d Cir. 1980) (reversing conviction in light of government's "improper" references to the defendant's wealth).

Evidence of a "lavish lifestyle" is not relevant to motive, intent or any other Rule 404(b) purpose. There is no basis to believe that a person who spends his money on expensive vacations or private school has any more incentive than a thrifty person to commit fraud. *United States v. Mitchell*, 172 F.3d 1104, 1108-09 (9th Cir. 1999) ("A rich man's greed is as much a motive to steal as a poor man's poverty. Proof of either, without more, is likely to amount to a great deal of unfair prejudice with little probative value."); *United States v. Jackson-Randolph*, 282 F.3d 369, 377-78 (6th Cir. 2002) ("it is illogical and improper to equate financial success and affluence with greed and corruption" (citing *Stahl*)). One might argue equally that a person with Mr. Runner's wealth and tastes has *less* incentive to take illegal steps to protect his income. The proposed evidence is irrelevant to any proper purpose and unfairly prejudicial under binding precedent. It should be precluded.

## V. EVIDENCE OF UNCHARGED DEBT COLLECTION PRACTICES UNCONNECTED TO MR. RUNNER SHOULD BE PRECLUDED

The government seeks to introduce evidence that "the mailing operation" sent debt collection letters that "contained falsehoods and used false names." (Letter at 3). Actually, the letters were sent by an independent contractor, Sherry Gore, who pled guilty to a conspiracy count and was sentenced to probation. *United States v. Gore*, No. 18-cr-0046 (S.D. Ind.).

Ms. Gore is not relevant to Mr. Runner. The government has disclosed hundreds of thousands of her documents. In them, we found Mr. Runner's name mentioned once—in an address list. We have seen zero evidence, including in the tens of thousands of emails of Mr. Runner and his associates, that Mr. Runner ever corresponded or had any contact with Ms. Gore, or had the slightest clue who she was or what she was up to.

Moreover, Ms. Gore testified that she did not believe the psychic mailings were "illegal" or "breaking the law;" she analogized them to lawful credit card marketing. (Tr. 26-27, Oct. 7, 2022, Doc. 38). Her lawyer admitted his own difficulty with the illegality, but ventured—with no objection from the government—that the mailings were illegal because their purported psychic author was a made-up "persona." (*Id.* at 28). Yet that is fraudulent inducement, not fraud. (*See* M&O at 27). Admitting evidence of an uncharged conspiracy based on that defective theory would utterly confuse the jury, not to mention lengthen an already extensive trial with distinct acts unconnected to Mr. Runner. The evidence should be excluded. *Kurland*, 2022 WL 2669897, at *6; *Kahale*, 789 F. Supp. 2d at 385-86; *Newton*, 2002 WL 230964, at *3.

---

[1] Subject to limiting instructions. *United States v. Quattrone*, 441 F.3d 153, 187 (2d Cir. 2006).

        Respectfully submitted,

        /s James Darrow

        James Darrow
        Assistant Federal Defender
        Tel. (718) 407-7419
        james_darrow@fd.org

        *Attorneys for Patrice Runner*

cc:    Counsel of record (by ECF)