```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,

        -against-                       MEMORANDUM & ORDER
                                        18-CR-0578(JS)
PATRICE RUNNER,

              Defendant.
----------------------------------X
APPEARANCES
For United States:   John W. Burke, Esq.
                     Charles B. Dunn, Esq.
                     U.S. Department of Justice
                     P.O. Box 386
                     Washington, DC  20044

                     Rachel Baron, Esq.
                     Ann F. Entwistle, Esq.
                     U.S. Department of Justice
                     450 5th Street NE, Suite 6400 S
                     Washington, DC  20001

                     Charles N. Rose, Esq.
                     United States Attorney's Office
                     610 Federal Plaza
                     Central Islip, NY  11722

For Defendant:       James Darrow, Esq.
                     Federal Defenders of New York
                     One Pierrepont Plaza, 16th Floor
                     Brooklyn, NY  11201

                     Charles V. Millioen, Esq.
                     Federal Defenders of New York
                     770 Federal Plaza
                     Central Islip, NY  11722
```

SEYBERT, District Judge:

Presently before the Court is the motion by Patrice Runner ("Defendant") to preclude certain evidence that was noticed by the Government pursuant to Federal Rule of Evidence

("Rule") 404(b).  (See Rule 404(b) Notice, ECF No. 53-1; Mot., ECF No. 56.)  For the reasons that follow, Defendant's motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND

The Court presumes the parties' familiarity with the background of this case, which is set forth in the Court's prior decision denying Defendant's motion to dismiss the Indictment and is incorporated herein by reference . See United States v. Runner, No. 18-CR-0578, 2023 WL 2429610, at *1-3 (E.D.N.Y. Mar. 9, 2023). Generally, the eighteen-count Indictment charges Defendant with conspiracy to commit mail and wire fraud, mail and wire fraud, and conspiracy to commit money laundering in connection with Defendant's operation of a psychic mail order scheme between January 1994 and November 2014.  The Government alleges Defendant fraudulently represented that victims would receive personalized letters and psychic services from renowned psychics Maria Duval or Patrick Guerin in exchange for monetary payments.

On March 24, 2023, the Government provided notice to Defendant of evidence concerning "other crimes, wrongs and acts" that it intends to introduce at trial.  The Government's Rule 404(b) notice itemizes this evidence into six categories: (1) fraudulent nutritional supplement mailings and additional fraudulent psychic mailings under the name Irma Horvath, a psychic character; (2) consumer complaints and government investigatory

2

actions into Defendant's mailings; (3) Defendant's bad faith negotiations with the U.S. Postal Service ("USPS") from 2004 to 2007 to conceal his involvement in a mailing operation separate from the one underlying this case; (4) evidence of Defendant's lavish lifestyle; (5) Defendant's failure to report the theft of cash payments made by victims of the psychic mail operation; and (6) the psychic mail operation's use of threatening collection letters to extract money from victims. (See Rule 404(b) Notice at 1-3.)

In the instant motion, dated April 12, 2023, Defendant seeks to preclude the Government from introducing the majority of this purported Rule 404(b) evidence. (See Mot. at 2-6.) The Government filed its opposition on April 19, 2023. (See Opp'n, ECF No. 57.)

## DISCUSSION

I.  Legal Standards

   A.  Motions *in Limine*

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions in limine." Highland Cap. Mgmt., L.P. v. Schneider, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing Luce v. United States, 469 U.S. 38, 41 n.4 (1984)). "The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility of certain forecasted evidence." United States v. Kuo Chen, No.

3

10-CR-0671, 2011 WL 197585, at *1 (E.D.N.Y. Jan. 20, 2011) (citing Luce, 460 U.S. at 40 n.2). In considering a motion in limine, a trial court should only exclude evidence when it is "clearly inadmissible on all potential grounds." Id. (citing Baxter Diagnostics, Inc. v. Novatek Med., Inc., No. 94-CV-5220, 1998 WL 665138, at *3 (S.D.N.Y. Sept. 25, 1998)); see also United States v. Ceballo, No. 13-CR-0308, 2014 WL 4980554, at *1 (E.D.N.Y. Oct. 6, 2014) ("Only when evidence is 'clearly inadmissible on all potential grounds' should evidence be excluded on a motion in limine." (quoting United States v. Paredes, 176 F. Supp. 2d 192, 193 (S.D.N.Y. 2001))). Moreover, "[a] court considering a motion in limine may reserve judgment until trial so that the motion is placed in the appropriate factual context." See Ceballo, 2014 WL 4980554, at *1 (citing Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Grp., 937 F. Supp. 276, 287 (S.D.N.Y. 1996)). In its discretion, the Court may also alter a prior in limine ruling at trial "when the case unfolds." See Luce, 469 U.S. at 41-42 ("The [in limine] ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling."); see also United States v. Ulbricht, 79 F. Supp. 3d 466, 478 (S.D.N.Y. 2015) ("In limine rulings occur pre-trial,

4

and that fact has significance. The evidence at trial may come in differently than anticipated, altering the solidity of the proffered basis for a pre-trial ruling. The Court therefore invites parties who believe that the factual record as developed at trial supports a revised ruling to bring such an application in a timely manner.").

    B.   Rule 404(b) Evidence

It is well-established in the Second Circuit that "[e]vidence of uncharged criminal conduct is not evidence of 'other crimes, wrongs, or acts' under Rule 404(b) if that conduct": (1) "arose out of the same transaction or series of transactions as the charged offense"; (2) "if it is inextricably intertwined with the evidence regarding the charged offense"; or (3) "if it is necessary to complete the story of the crime on trial." United States v. Robinson, 702 F.3d 22, 37 (2d Cir. 2012)(quoting United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000)). On the other hand, pursuant to Rule 404(b), evidence of crimes, wrongs or other acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b).

II.  Analysis

Defendant's in limine motion seeks to preclude the following evidentiary matters identified in the Government's Rule

5

404(b) notice: (1) uncharged mailings that do not involve psychic services; (2) evidence of complaints, investigations and actions into Defendant's mail operation; (3) evidence of Defendant's lavish lifestyle; and (4) evidence of uncharged debt collection practices. (See Mot. at 2-5.) The Court will address each of these issues in turn.

A. Uncharged Mailings

In his first in limine request, Defendant seeks to preclude the Government from introducing evidence related to an aspect of his mailing operation that did not provide psychic services, but instead provided weight-loss and nutritional product mailings during the same time period as the charged conduct. (See id. at 2-3.) Although the Government "seeks to admit limited evidence that Mr. Runner's business was searched in connection with an investigation by Canadian and U.S. authorities in approximately 1998" into the weight-loss and nutritional product mailings, this "limited evidence" will not consist of the actual uncharged mailings nor any testimony that these uncharged mailings offered weight-loss and nutritional supplements. (See Opp'n at 5-6; see also id. at 1 n.1 ("Insofar as there is a risk that, absent the context that the mailing at issue in the 1998 government action involved weight-loss and nutritional supplements, jurors might assume the mailings involved psychics, the government proposes that it ask its witnesses if the mailings at issue in

6

those actions involved psychics (to which the answer would be 'no') and the Court then give an appropriate limiting instruction.").) Thus, to the extent Defendant seeks to preclude the Government from introducing the uncharged mailings, that aspect of his motion is DENIED as moot.

The Government intends to proffer evidence that shows the similarities in how the psychic mailings and weight-loss/nutritional mailings were accomplished, and how the 1998 investigation and resulting search warrant into the weight-loss/nutritional mailings demonstrate Defendant's ownership and control of the mail operation, Defendant's knowledge of the mail operation's vulnerability to governmental investigation, and Defendant's fraudulent intent to commit the crimes charged here.

Evidence of how and with whom Defendant accomplished uncharged facets of the mail operation may have some probative value to the conspiracy charges; however, the Court finds the probative value of evidence related to the weight-loss/nutritional mailings, including the 1998 investigation, to be significantly outweighed by the concerns delineated in Rule 403. Although the Court was not made privy to the contents of the uncharged weight-loss/supplement mailings nor any information beyond the mere existence of the 1998 investigation and search warrant related thereto, assuming arguendo that the uncharged mailings contained false or misleading information, the Court is not convinced that

7

introducing evidence related to a non-psychic services aspect of Defendant's direct mail operation is anything other than impermissible propensity evidence. See United States v. Kurland, No. 20-CR-0306, 2022 WL 2669897, at *6 (E.D.N.Y. July 11, 2022) ("Still, the court is not persuaded that any other part of the scheme is much more than propensity evidence, and to the extent it has any probative value, that value would clearly be substantially outweighed by unfair prejudice. Evidence of an entirely separate scheme of tax fraud . . . 'could lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.' The Government could have charged those crimes but did not. The court will therefore not hold a mini-trial on them. Introducing an entirely uncharged scheme involving different legal issues would create substantial and unfair prejudice, and would risk the jury confusing the issues." (quoting United States v. Zhong, 26 F.4th 536, 553 (2d Cir. 2022))); see also United States v. Levy, No. 11-CR-0062, 2013 WL 655251, at *1 (S.D.N.Y. Feb. 22, 2013) ("[T]he Court is convinced that the probative value of evidence of the FTC fraud—either as direct evidence of Mr. Levy's misrepresentations regarding the FTC fraud, or as background evidence of the conspiracy charged here or proof of knowledge or intent—would be substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. The introduction of this evidence would lead to a

8

confusing 'mini-trial' relating to the FTC fraud that would have some probative value, but a significant risk of unfairly prejudicing Defendants by introducing evidence indicating a propensity to commit fraud, confusing the issues actually alleged in the Indictment, and misleading a jury that will already be tasked with determining the charged conduct of securities fraud, wire fraud, multiple conspiracies to commit securities and wire fraud, and money laundering in the context of a pump and dump scheme involving start-up companies and penny stocks. In addition, this evidence is not admissible under Rule 404(b) as background to the charged conspiracy because the FTC fraud involved a separate, discrete incident of fraud or deceit that is not inextricably intertwined with the Indictment's charges or necessary to complete the Indictment's story." (first citing United States v. Fama, No. 12-CR-0186, 2012 WL 6094135 (E.D.N.Y. Dec. 7, 2012); then citing United States v. Hatfield, 685 F. Supp. 2d 320, 324 (E.D.N.Y. 2010))).

Accordingly, Defendant's motion is GRANTED to the extent the Government is precluded from referring to the weight-loss/nutritional supplement mailings and 1998 investigation.

B. Prior Investigative Actions into Psychic Mailings

Next, Defendant moves to preclude the introduction of evidence regarding the Better Business Bureau ("BBB") and prior governmental inquiries into his psychic mailings. (See Mot.

9

at 3-4; see also Opp'n at 8 ("[T]he government's evidence in this category is about the charged psychic mail fraud scheme.").) In support, Defendant argues:

> The core problem is that none of the agencies mentioned by the government focuses on federal mail or wire fraud, and none of their inquiries appears to have been focused on the primary issue for trial: whether there was an intent to harm the customers, not just deceive them. To the contrary, for each of the agencies mentioned, mere deceit was sufficient to prompt action. The 2004 United States Postal Service administrative action, for example, was undertaken pursuant to 30 U.S.C. § 3005, a civil statute which prohibits "conducting a scheme or device for obtaining money or property through the mail by means of false representations." The Better Business Bureau, similarly, is focused on "creating and maintaining trust in business," including whether businesses "[h]onestly represent products or services."

(Mot. at 4.) According to Defendant, his knowledge of the BBB and USPS inquiries, which he claims were initiated based upon the psychic mailings being merely deceptive, is not probative of his intent to commit the charged fraud crimes, which require a higher standard of proof. The Court disagrees.

In its decision denying Defendant's motion to dismiss the Indictment, the Court spent considerable time discussing what is and what is not fraud under the mail and wire fraud statutes, namely, conduct that is merely deceitful versus conduct that is intended to harm victims. See Runner, 2023 WL 2429610, at *4-11. While Defendant is correct that mere deceit, without more, is

insufficient to sustain a fraud conviction, see id. at *4 (citing United States v. Corsey, 723 F.3d 366, 373 (2d Cir. 2013)), it is unnecessary for the Government to introduce direct proof of Defendant's fraudulent intent. In essence, Defendant unpersuasively asks the Court to draw an equivalence between his seemingly self-imposed "mere deceit" threshold scrutiny requirement for the BBB and USPS (among others) to initiate the disputed investigations into the psychic mailings, and the tests for the admissibility and relevancy of evidence of fraud. Evidence pertaining to prior investigations into the psychic mail scheme, which, according to the Government, put Defendant on notice that consumers were complaining of the mailings and being deceived, is certainly relevant to Defendant's mental state and is therefore admissible as Rule 404(b) evidence. See United States v. Moseley, 980 F.3d 9, 27 (2d Cir. 2020) ("Here, borrower complaints about illegal practices by Moseley's business served to put Moseley on notice of their potential illegality. That he continued to operate his business despite this notice makes the complaints probative of his intent to violate the law. Furthermore, any impermissible effect was addressed by the district court's appropriate limiting instruction, which directed the jury to consider the complaints only for purposes of assessing Moseley's state of mind."). It necessarily follows that actions Defendant took to conceal or remove his physical and corporate presence from the mail

operation after these investigations are similarly relevant and admissible.

Unlike the evidence concerning the 1998 investigation into the uncharged weight-loss and nutritional supplement mailings, the Court does not find that any of the Rule 403 concerns substantially outweigh the probative value of the prior investigations into Defendant's psychic mailings. Accordingly, this aspect of Defendant's motion is DENIED.

C. Defendant's Lavish Lifestyle

Third, Defendant moves to preclude evidence related to his "lavish lifestyle," i.e., that he spent money on expensive vacations, private schools for his children, funding and operating a leather-goods store in Cannes, France, and multiple homes in various countries. (See Mot. at 4-5.) Although Defendant concedes "evidence that [he] made money from the alleged fraud could be relevant" to the money laundering conspiracy count, he argues evidence which shows that he "simply spent money--including money from lines of business unrelated to psychic services--is relevant to nothing but the fact that he had a taste for high-class expenditures," which is a blatant appeal to class prejudice and cannot be condoned. (Id. at 5.)

Defendant purports to advance a categorical position which states "[e]vidence of a lavish lifestyle is not relevant to motive, intent or any other Rule 404(b) purpose." (Id.) This

12

Court recently rejected that precise argument in United States v. James, a healthcare fraud case, and adheres to that ruling here. See 607 F. Supp. 3d 246, 263-64 (E.D.N.Y. 2022) ("[United States v. Hatfield, 685 F. Supp. 2d 320 (E.D.N.Y. 2010)] did not purport to categorically forbid introduction of evidence of wealth to show motive, as such a per se rule would be untenable under Second Circuit caselaw." (citing United States v. Quattrone, 441 F.3d 153, 187 (2d Cir. 2006))).  In James, the Court highlighted that the relevancy of the wealth evidence derived from whether the "[d]efendant's funding for his personal spending came from a pre-existing, legitimate source of income, or conversely, from his business through which he carried out the alleged scheme.  If the latter, then the wealth evidence is relevant to [the] [d]efendant's motive" to commit the charged fraud and money laundering.  Id. at 264 (citing United States v. Cardena, 842 F.3d 959, 983-84 (7th Cir. 2016)).

Here, the Government represents that the evidence will show Defendant's lifestyle was "funded by victim payments to the indicted scheme." (Opp'n at 9).  In accordance with James, the Court agrees that this proffered wealth evidence is admissible under Rule 404(b).  Thus, Defendant's motion to preclude such evidence is DENIED.  The parties shall confer, and to the extent they are able to agree to one, propose an appropriate limiting instruction for the Court's consideration regarding this evidence.

D. Evidence of Debt Collection Letters

Last, Defendant moves to preclude the introduction of debt collection letters sent by the mailing operation that purportedly contained falsehoods and used false names. (See Mot. at 5.) Defendant claims these letters were sent by an independent contractor, Sherry Gore ("Gore"), who pleaded guilty to conspiracy. (Id.) Defendant argues that Gore's letters are irrelevant because the discovery has shown Runner did not have any contact with Gore nor did he have "the slightest clue who she was or what she was up to." (Id.) Regarding the contents of the letters, Defendant submits they reflect fraudulent inducement and "not fraud," based upon statements made by Gore and her counsel during Gore's plea and sentencing hearing. (Id.) During that hearing, which occurred on August 10, 2018 in the Southern District of Indiana, Gore analogized the letters to "lawful credit card marketing" and her attorney, who "admitted his own difficulty with [understanding] the illegality" of the letters, speculated that this illegality was due to "their purported psychic author [being] a made-up persona." (Id. (citing United States v. Gore, No. 18-CR-0046, Aug. 10, 2018 Hr'g Tr., ECF No. 38 (S.D. Ind.)).)

As an initial matter, Defendant's argument that the debt collection letters are only indicia of "fraudulent inducement" and thus not evidence of "fraud" is unconvincing for reasons similar to the Court's rejection of Defendant's prior argument concerning

14

the irrelevancy of evidence of his knowledge of investigations into the mail operation. In essence, Defendant is preemptively asking the Court to weigh the sufficiency of evidentiary matters to sustain a conviction -- in isolation from the rest of the Government's case. As such, the proper inquiry is not whether these letters are <u>per se</u> fraudulent, but whether they are admissible at trial.

Although Defendant argues these letters should be excluded based upon his lack of knowledge of Gore and her actions, and because evidence of an uncharged aspect of the mail fraud conspiracy would confuse the jury, those are insufficient bases to justify preclusion here. First, "it is well settled law that an individual need not know the identities of all coconspirators in order to be found guilty of being a member of a conspiracy." <u>United States v. Dove</u>, 884 F.3d 138, 147 (2d Cir. 2018) (quoting <u>United States v. Harris</u>, 8 F.3d 943, 946 (2d Cir. 1993)); <u>see also</u> <u>United States v. Eppolito</u>, 543 F.3d 25, 47 (2d Cir. 2008) ("Indeed, in order for a single conspiracy to be found, it is not necessary that the conspirators even know the identities of all the other conspirators." (citing <u>Blumenthal v. United States</u>, 332 U.S. 539, 557 (1947))). Second, to prove a single conspiracy rather than multiple conspiracies, "the government must show that each alleged member agreed to participate in what he knew to be a collective venture toward a common goal." <u>Eppolito</u>, 543 F.3d at 47 (quoting

15

United States v. Berger, 224 F.3d 107, 114 (2d Cir. 2000)).  The Government intends to demonstrate that the "essential plan" of the mail fraud conspiracy was "to take as much money as possible from victims by means of lies sent through the mail."  (Opp'n at 10.) Although the Defendant asks the Court to deem the debt collection letters as a conspiracy distinct from the charged mail order psychic letter conspiracy, both schemes are part of the same overarching conspiracy.  See Berger, 224 F.3d at 114-15 ("[A] single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it may involve two or more phases or spheres of operation, so long as there is sufficient proof of mutual dependence and assistance." (quoting United States v. Maldonado-Rivera, 922 F.2d 934, 963 (2d Cir. 1990))).  Third, to the extent the admission of the debt collection letters may confuse the jury, the Court agrees with the Government that such confusion, if any, can be cured with a limiting instruction regarding the proper consideration of this evidence.  Accordingly, Defendant's motion to preclude the debt collection letters is DENIED.

## CONCLUSION

For the stated reasons, **IT IS HEREBY ORDERED that** Defendant's Rule 404(b) motion is GRANTED IN PART and DENIED IN PART.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: April 26, 2023
       Central Islip, New York