FILED
CLERK

2:03 pm, May 18, 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA,

**ORDER**

       -against-

18-CR-578 (JS)(AYS)

PATRICE RUNNER,
              Defendant.
------------------------------------------------------------------X

**SHIELDS, Magistrate Judge:**

      Defendant, Patrice Runner ("Defendant" or "Runner"), is charged in an indictment with operating a Canadian-based direct-mail operation that engaged in a fraudulent scheme directed at consumers in the United States and Canada. See generally Docket Entry herein ("DE") [1]. Jury selection in this case is set for May 30, 2023. Trial will begin shortly thereafter.

      Runner has been subject to pretrial detention since his December 2020 arraignment. The order of detention indicates that Runner was a flight risk. It also indicated that no bail package was offered. Presently before the Court is Runner's motion for pretrial release, pursuant to both 18 U.S.C. 1342(f) and (i). For the reasons set forth below, the motion for release is denied, but the Court directs that certain accommodations be made to allow Runner to properly prepare for trial and participate in his defense.

I.    The Indictment

      The indictment relies on alleged conduct that took place between January 1994 and November of 2014. It alleges four counts, as follows: (1) conspiracy to commit mail and wire fraud; (2) mail fraud; (3) wire fraud, and (4) conspiracy to commit money laundering. It also contains forfeiture allegations. The allegedly fraudulent communications forming the basis of the crimes charged are stated to have induced consumers to pay fees in exchange for purportedly

1

personalized astrological services, or for supposedly unique objects. Conspirators are alleged to have acted under the direction of Runner to handle the day-to-day operations of the scheme. More particularly, the scheme set forth in the indictment alleges that Runner and his co-conspirators wrote and edited letters representing that a psychic had visions and had determined – through the use of psychic powers – that the recipient had the opportunity to achieve wealth and happiness or avoid illness with the assistance of the psychic. Although the letters appeared to be individualized, the indictment alleges that they were mass produced with no personal involvement of a psychic. Addresses of recipients of the letters are alleged to have been obtained from mailing lists obtained from other direct mailers, including others that sent fraudulent letters. The indictment goes on to allege that, once recipients responded to the initial letters by sending small amounts of money and/or personal items, additional payments were sought. Many recipients are alleged to have received more than 100 letters. It is also alleged that, as part of the scheme, Runner and others opened accounts with a payment processing company located in Canada, which was involved in the deposits of cash and transfers to various shell companies. Runner is alleged to have directed wire transfers to bank accounts under his control located in Switzerland, Liechtenstein and other countries.

    As stated, the alleged fraudulent scheme is said to have taken place between 1994 and 2014. During this time period, the operation is alleged to have received more than $180 million from more than one million victims in the United States, many of whom are stated to have been elderly and vulnerable. Certain victim and transaction specific information is set forth in the indictment.

    During the course of the scheme alleged in the indictment, Runner is stated to have resided in various countries, including Canada, Spain, Switzerland, France, the Netherlands,

Costa Rica and Spain. At the time of his arraignment, Runner was extradited from Spain. He is not a United States citizen and has no ties to this country.

II.  The Arraignment and Prior Orders

Runner was arraigned on December 23, 2020. On that date, Runner was ordered detained on the ground that there was no condition or combination of conditions that would reasonably assure his appearance as required. No bail package was offered, and there is no indication that any family member offered to house Runner at the time. The docket indicates that members of his family reside in Spain. Thus, in an order dated November 21, 2022, the District Court denied Runner's request to direct the Bureau of Prisons to produce him to the United States Marshals Service ("USMS") so that Runner and his counsel could have access to a holding cell where a secured video call could be held between Runner and his minor children who reside in Spain. See DE [45] and Order of Seybert, J., dated November 21, 2022. The District Court noted that Runner could make an international call from the Metropolitan Detention Center ("MDC") – where he was being housed – as well as the burden that granting the request would place on the USMS.

III.  The Present Motion

Presently before the Court is Runner's application for release. The application for release was made on May 2, 2023 and a hearing before this Court was held on May 17, 2023. Runner seeks release under 18 U.S.C. 1342(f) and (i). As to the former, Runner seeks to make what he refers to as his first meaningful bail application. There is, in fact, no question that this is the first time that Runner has offered any bail package in support of his request for release. As to the latter branch of his request, made pursuant to 18 U.S.C. 3142(i) (which allows for release into the custody of an appropriate person to prepare for trial or any other compelling reason), Runner

3

seeks release into the custody of his son. He also states that he has not been afforded sufficient access to the extensive documents that form the basis of the Government's case and has received inadequate medical care in the MDC. The facts presented at the hearing follow.

 First, as to a bail package offered under 18 U.S.C. 1342(f), Runner seeks release into the custody of his twenty-six year old son, Axel Runner ("Axel"). Axel was interviewed by Pretrial Services on April 19, 2023. At the time, he relayed no plans to reside in the United States. On May 17, 2023, Axel was present in court and testified as to his background, employment, residence and resources. Axel is a citizen of Canada. He resides in British Columbia in a rental apartment with his brother, Dylan Runner ("Dylan"). Dylan was also present in court for the hearing. He offered moral suasion but was not there to serve as a suretor. Dylan and Axel are roommates in Canada. Neither brother maintains any residence in the United States.

 At the time of the hearing, Axel was staying at a local hotel. He stated that his father could stay with him at the hotel and that he was looking into a temporary rental where he and his father could reside during trial. Axel had not secured such a rental at the time of the hearing. Axel has been employed by the same employer for one year and ten months. He earns approximately $10,000 per month. He works remotely and could continue working after relocating to the United States. He states (and Pretrial Services agrees) that he is in a position to secure a $25,000 bond. As part of his bail application, Runner states that he would consent to electronic monitoring and waiver of the right to extradition if he fled to a country that does not extradite its citizens. Runner is a citizen of both France and Canada – but not of the United States. It was not clear at the time of the hearing whether France agrees to extradite its own citizens to face trial in a case such as the present one, and the Court makes no finding relying on any such law.

As to the request to be released to prepare for trial, defense counsel referred to the vast amount of documents produced by the Government. While the document list has been pared down for use at trial, it was represented that this was an extremely document intensive case. The District Court has recognized Runner's need to review documents. Thus, on May 11, 2023 – after the making of the present motion but before the hearing – the District Court granted Runner's motion (which the Government joined) seeking daily flexible access to discovery materials. See DE [70] and Order of Seybert, J., dated May 11, 2023. Runner points out that extensive document review will continue to be conducted during trial so that the defense can properly react to the Government's case, which is currently estimated to take eight trial days. The normally difficult logistics of preparing for each day's trial when the defendant is incarcerated is stated to be exacerbated by the fact that Runner will have to be transported daily from to the MDC to the Central Islip Courthouse, making meetings with counsel practically impossible.

Runner also seeks release based upon medical issues. Specifically, Runner states that he has continually requested, but has not yet received, a COVID-19 vaccination. He complains of having blood in his urine. While he acknowledges that he has been seen for that condition, he has been told that it was nothing to worry about and has not received any specific diagnosis or treatment with respect thereto. Runner also complains of suffering from spells of vertigo, anxiety and insomnia.

IV.     Disposition of the Motion

Upon consideration, the Court denies Runner's application for release under either 18 U.S.C. 1342 (f) or (i). The Court holds that Runner presents a serious risk of flight. He has no ties to the United States and significant ties outside of this country. He appears to have a family

with minor children in Spain and other children who reside in Canada. While two of those children were present in Court, only Axel was present to serve as a financial suretor. Both children were present to offer moral suasion. Nonetheless, the Court holds that the bail package offered is insufficient to secure Runner's presence. Neither Runner nor Axel nor Dylan have any ties to this country. While the brothers appear to be visiting their father here, they are staying at a hotel. Despite submitting for an interview with pretrial services a month prior to the hearing, Axel has not secured any permanent place to reside during trial. For the foregoing reasons, the Court denies the request for bail modification pursuant to 18 U.S.C. 1342(f) and (i). While the Court denies Runner's request to be released into Axel's custody at some unspecified location, the Court grants the following relief.

First, during the week prior to trial, the USMS is directed to produce Runner to either the Brooklyn Courthouse (if he is housed in the MDC), or the Central Islip Courthouse (if he is housed in Nassau or Suffolk Counties), so that he may meet with his lawyers (on a daily basis if they so request) to review discovery and prepare for trial. Counsel have represented that their offices in Brooklyn and Central Islip both have appropriate, secure facilities where such review can be conducted. It is further ordered that, during jury selection and trial of this case, the USMS arrange for Runner to be housed in a facility in either Nassau or Suffolk County so that he may meet with his lawyers and prepare for each day of trial. The Court makes clear that this order is granted based upon the facts presented in this case and in light of the extensive document review necessary. In the event that the USMS finds compliance with this Court's order impossible, they are directed to communicate this fact to the Government and the Court will consider any modification necessary to ensure Runner's right to effectively participate in his defense and to accommodate the concerns of the USMS. As to the medical issues raised, the Court directs only

that the facility housing Runner allow him to participate in any vaccination program that is currently in effect. In view of the fact that Runner appears to have been seen for his other medical conditions, the Court declines to enter any other medical order at this time.

Finally, the Court reminds all counsel herein of the Court's direction that they submit proposed voir dire, as well as an agreed-upon explanation of the case, and a list of names and entities to be read to prospective jurors. All submissions must be docketed on or before May 23, 2023.

**SO ORDERED.**

Dated: Central Islip, New York
       May 18, 2023

                                               /s/ Anne Y. Shields
                                               Anne Y. Shields
                                               United States Magistrate Judge